## INDIANAPOLIS STREET RAILWAY COMPANY *v.* FEARNAUGHT.

[No. 5,777. Filed November 14, 1906.]

1. TRIAL.—*Verdict.—General.—Interrogatories.—Which Controls.* —Where the answers to the interrogatories to the jury are not in irreconcilable conflict with the general verdict, it prevails. p. 77.

2. SAME.—*Interrogatories to Jury.—Conflict.—Street Railroads. —Negligence.*—An answer to an interrogatory to the jury that the motorman of the street car causing the injury had no reason to anticipate that the switch would not remain in position, conflicts with answers showing that a car had formerly been derailed by such switch, that the motorman could have anticipated that the car would not pass in safety and that the company had reason from the history of such switch to anticipate the injury. p. 79.

3. STREET RAILROADS.—*Negligence.—Defective Switches.—Notice.* —Actual knowledge that a switch is defective is not necessary to render the operating street railroad company liable for injuries caused thereby, such liability existing if by the exercise of reasonable care the defect could have been ascertained. p. 79.

4. TRIAL.—*Interrogatories to the Jury.—Conflict.*—An answer to an interrogatory to the jury that there was no evidence that the motorman of the car causing the injury had reason to think the switch would not remain in position is in conflict with an answer showing that with proper inspection of the switch the accident could have been anticipated. p. 80.

5. SAME.—*Answers to Interrogatories to Jury.—Conflict.—Effect.*—Conflicting answers to the interrogatories to the jury nullify each other and do not overthrow the general verdict. p. 80.

6. SAME. — *Interrogatories to Jury. — Street Railroads. — Negligence.—Defective Switches.*—Answers to interrogatories to the jury showing that defendant street railroad company's use of a switch made by a reputable manufacturer and generally in use, but which had become defective, a reasonable inspection being sufficient to disclose the defects, sustain a general verdict for plaintiff, who was driving on the street and was injured by the derailing of a street car, occasioned by such defective switch. p. 80.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Action by Charles Fearnaught against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter, Smith, Cambern & Smith* and *W. H. Latta,* for appellant.

*J. E. Bell, Mason & Jackson* and *Innis & Morgan,* for appellee.

COMSTOCK, P. J.—The action was for personal injuries received by appellee by being struck by one of appellant's cars at the corner of Maryland and Illinois streets in the city of Indianapolis, April 13, 1902. Upon change of venue, the case was tried in the Rush Circuit Court. The street railway company, at said date and for several years prior thereto, maintained double tracks upon Illinois street, with switches leading in either direction into Maryland street. Appellee was riding in a carriage with his wife and little boy, driving north upon the east side of Illinois street, and as he reached the intersection of Maryland street one of appellant's large, double-truck cars, running at a rate of fifteen miles per hour, was passing over this Maryland street switch, and as the front trucks passed over the switch it was thrown open so that the rear trucks of the car turned into the switch and whirled quickly to the east. The rear end was carried around so that the car was swept side-ways down Illinois street, striking and crushing the carriage in which appellee was riding, and inflicting the injuries for which he sues.

The complaint was in two paragraphs, the first alleging negligence by the street car company in allowing the switch to become out of repair, worn, loose, and dangerous, and in running the car at a high and dangerous rate of speed over the same. The second charges negligence in the high and dangerous rate of speed at which the car passed over the switch.

The jury returned a verdict for $1,800 in favor of appellee, and with the verdict returned answers to interrogatories. Judgment was rendered for the amount of the verdict.

The error assigned is the action of the court in overruling appellant's motion for judgment in its favor upon the interrogatories returned by the jury, notwithstanding the general verdict.

The jury having, by their general verdict, found in favor of appellee upon all the issues, it only remains to determine, under numerous decisions, whether there exists an irreconcilable conflict between it and the facts specially found. If such conflict does not exist, the general verdict must stand.

The material facts found, show that said switch was manufactured by the Loraine Steel Company, a reputable manufacturer of frogs and switches for street railway purposes, from measurements made at the place where the switch was to be used in the operation of the road. It was covered by a patent, owned or controlled by the Loraine Steel Company, and was, when purchased, and has been at all times since, of a kind and character in general use upon street railways in the United States. It was in position at the intersection of Illinois and Maryland streets in the city of Indianapolis in 1899. Has been in almost constant use, for cars of all patterns and running at all rates of speed, from the time it was placed in position until the time of said accident. Approximately one million cars passed over said switch, in said position, prior to the accident. It had never been repaired, altered, or in any manner changed from the time it was placed in position until the accident. Another car had been derailed at said switch previous to the accident. When the tongue was placed for the car to continue on a straight track, the point of the tongue laid in behind a shoulder of steel so as to be protected from coming in contact with any part of the wheel,

except only the ball of the wheel, as it passed over the switch. When placed in position so that the car would continue upon a straight track, the top of the switch tongue, and the rail at each end of the switch, constituted a practically continuous rail for the passage of the car wheels. There was a groove at the side of the switch track for the flange of the wheel to run in, in passing over the switch. The tongue of the switch was not affected by the speed of the car in passing over the switch, if it was in perfect condition. When the car in question approached said switch, the switch was in proper position for the car to continue on the straight track. It approached and passed over said switch at a speed of fifteen miles per hour. The speed of the car was practically the same from the time it approached and passed over the switch, until the car was derailed. The motorman had no reason to anticipate, as he approached said switch, that the tongue of the switch would not remain in position while the car was passing over it. The point of the tongue moved from side to side as the car passed over it, caused by the rapid motion of the car and worn condition of the switch tongue. The motorman, as he approached the switch, could have anticipated that the car would not pass over it in safety. The front trucks passed over on the straight track in safety; the rear trucks left the track at or near said switch. The proximate and producing cause of the rear trucks' leaving the track was the loose and worn condition of the switch tongue and the speed of the car. When the switch was in perfect condition, the passing of the front trucks of the car over said tongue would have a tendency to press the tongue back against the rail and thereby hold it in proper-position for the rear trucks to follow on the straight track. During the years said switch had been in use, up to the time of the accident, not many cars had passed over it at the same or higher speed than the car in question, except cars run by the motorman of the derailed car. The switch tongue moved

one-half inch to the west after the front trucks entered upon it. This movement was caused by the rapid motion of the car. At the time of the accident- the switch was out of repair or defective, in being worn and in a loose condition. This worn and loose condition caused the derailment of the car. Defendant could have anticipated this accident by proper inspection. The defendant had reason to anticipate this accident from the prior use and history of the switch. The derailment was not a purely accidental occurrence happening without negligence on the part of any one.

It is claimed by appellant that the negligence of the motorman is expressly negatived by the answers to interrogatories nineteen and thirty-nine. Interrogatory nineteen and answer thereto read: "Did the motorman of said car have any reason to anticipate, as he approached said switch, that the tongue of the switch would not remain in position while the car was passing over it? A. No." The answer to question ten shows that another car had been derailed at said switch prior to the accident. The answer to interrogatory twenty-six shows that the motorman could have anticipated that the car would not pass over the switch in safety; to forty-five, that the defendant had reason to anticipate this accident from the prior use and history of the switch. With these interrogatories and answers, the nineteenth conflicts. Interrogatory thirty-nine reads: "Could the motorman have known, when he approached or went upon the switch, that it would not remain in proper position until after the car had passed over it? A. No evidence."

If the jury understood the thirty-ninth interrogatory to ask whether the motorman could, with the car running at fifteen miles an hour, as he approached or went upon the track, have known that the switch would not remain in position, the answer may have been correct, as there may have been no evidence showing actual knowledge, or in this case, fore-knowledge of a result which

was not absolutely certain to occur.    But it was not neces-
sary to show actual knowledge.    Other findings show that
the defendant had reason to anticipate the disaster, and
the answer to the forty-fourth interrogatory shows
that by proper inspection the accident could have
been anticipated, which in effect says that inspec-
tion could have given knowledge of the unsafe condition of
the switch.    Said answer to thirty-nine is in conflict with
forty-four.

Conflicting   answers   to   interrogatories   nullify   each
other, and do not overthrow the general verdict.
*McCoy* v. *Kokomo, R., etc., Co.* (1902), 158
Ind. 662.

The special findings that are not in conflict with
each other sustain the general verdict.
Judgment affirmed.